CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 18 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **GARY BUTERRA WILLIAMS,** | ) | CASE NO. 7:13CV00375 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MR. J. COLLINS, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| **Defendant(s).** | ) | |

Gary Buterra Williams, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials placed him in segregated confinement in retaliation for his grievances and his pursuit of a legal action in the Supreme Court of Virginia. The matter is now before the court on Williams' motion for leave to file a second amended complaint. While the court will grant the motion, upon review of the record, the court finds that the action as amended must be summarily dismissed without prejudice.

### Background

Williams is an inmate at Wallens Ridge State Prison. In his second amended complaint, he alleges that he has asked repeatedly and unsuccessfully for a prison job and has filed complaints, asserting that the prison's hiring practices are arbitrary and unfair. In April 2013, Defendants J. Collins, Unit Manger of A-Building, and Lt. David Greer, A-Building Supervisor, allegedly warned Williams that they did not approve of inmates notifying the warden, assistant warden, or anyone else about events in A-Building. Nevertheless, Williams filed a petition for a

writ of mandamus in the Supreme Court of Virginia.[1] He also wrote letters to Harold Clarke, the director of the Virginia Department of Corrections ("VDOC"), and to George Hinkle, a VDOC regional administrator, asking to be transferred away from Wallens Ridge. Williams advised Hinkle and Clarke that he wanted a transfer, because only inmates willing to become "informant[s]" can have prison jobs there and because he wanted to stay alive. (ECF No. 19, at 9-10.)[2]

On July 29, 2013, Williams asked Collins again for a prison job "so that [Williams] wouldn't be force[d] . . . [to] file complaints and suits." (ECF No. 19, at 4-5.) Within days, on August 1, 2013, Greer placed Williams on indefinite general detention without filing any disciplinary charges against him. Williams alleges that Collins admitted telling Greer to place Williams on detention without notice or a hearing because he [Collins] was having a bad day and was in a bad mood when he received Williams' request for a job. Restrictions for inmates in detention prevent Williams from attending church services or enjoying other general population privileges, such as contact visits, daily showers, television, recreation in the gym, employment, attending classes, and interacting with fellow inmates.

After his transfer to segregated confinement, Williams filed this § 1983 lawsuit against Collins and Greer in August, 2013. On September 13, 2013, "in a show of support for defendant Greer," Hinkle and Clarke authorized Defendant Welch to classify Williams as a security threat and assign him indefinitely to segregation "without due process or any available administrative remedy." (ECF No. 19, at 10.) As a justification for this classification change, defendants

---

[1] Williams does not state when he filed his mandamus action or what its outcome was. Court records available online indicate that he filed two mandamus petitions in the Supreme Court of Virginia in May 2013, both of which the Court refused in September 2013 (Record Nos. 130740 & 130803).

[2] The page numbers listed here are those assigned by the court's electronic filing system and differ slightly from the page numbers Williams placed on his handwritten document.

2

allegedly relied on Williams' request for a transfer and for relief from "dangerous prison policies." (ECF No. 19, at 7.)

Williams also alleges that D. Crabtree, Institutional Grievance Coordinator for the VDOC, refused to process an unrelated grievance he wrote against the law library supervisor on May 22, 2013. Crabtree returned the grievance, unprocessed, noting that Williams would be charged for using vulgar or insolent language. No such charge was filed. In September 2013, Crabtree refused to provide Williams with informal complaint forms he requested. Later that month, Crabtree refused to file a grievance Williams submitted.

In his second amended complaint, Williams names the following defendants: Collins, Greer, Welch, Hinkle, Clarke, and Crabtree. Williams seeks monetary damages and injunctive relief reinstating him to the general population.

## Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Inmates do not have a constitutionally protected right to a prison grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Because "there is no

constitutional right to participate in grievance proceedings," id., Williams' allegations that Defendant Crabtree did not provide him with forms or refused to process certain administrative grievances he submitted do not state constitutional claims actionable under § 1983. Therefore, the court dismisses such claims under § 1915A(b)(1) as legally frivolous.

Williams' retaliation claims against the remaining defendants must also be dismissed. To state a colorable claim of retaliation, the plaintiff inmate must allege facts supporting a reasonable inference that the defendant took the alleged retaliatory action because of plaintiff's exercise of some constitutionally protected right. Adams, 40 F.3d at 75. The Fourth Circuit has held that a prisoner's use of grievance procedures is not a protected First Amendment right. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). Moreover, bare assertions of retaliation, without supporting facts, do not establish a claim of constitutional dimension. Id. at 74-75. In addition, plaintiff must state facts showing that the conduct complained of adversely affected his constitutional rights. ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). It is insufficient to show that a defendant's conduct caused mere inconveniences or reduced privileges. Id. at 786 n. 6.

Williams does not state any facts to support a reasonable inference that the defendants placed him in detention in order to retaliate against him for exercising constitutionally protected rights. By Williams' own account, Collins claimed he had Williams placed in detention in July 2013 because Collins was "in a bad mood" over Williams' repetitious request for a job. Williams had no constitutional right to file the grievance, however, or to have a prison job.[3] Later allegations indicate that officials held Williams in segregated confinement because they

---

[3] It is well settled that federal courts do not occupy "the role of super wardens of state penal institutions" and "do not sit to supervise state prisons." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) (internal citations omitted). "In particular, the classifications and work assignments of prisoners in such institutions are matters of prison administration, within the discretion of the prison administrators . . . " Id.

perceived from statements he made that he might pose a security threat. Williams alleges no facts linking his detention in July to his mandamus proceedings, his conversations with Collins and Greer in April 2013 about their dislike of hearing inmates' dissatisfaction with conditions in A-Building, or his exercise of any constitutionally protected right. Thus, Williams' conclusory assertion that Collins and Greer detained him to retaliate against him has no factual support and states no plausible claim actionable under § 1983. Williams' claims that Welch, Clarke, and Hinkle retaliated against him include even less factual matter concerning any actions taken by these defendants in violation of Williams' rights. He states no facts linking their conduct to any retaliatory motive arising from his exercise of any constitutional right. The court summarily dismisses without prejudice Williams' retaliation claims under § 1915A(b)(1) as frivolous.

Finally, Williams' allegations state no federal due process claim. When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, state prison regulations may create liberty interests, which are limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Court in Sandin found that because the segregated confinement imposed in that case did not exceed similar, but totally discretionary, categories of confinement in either duration or degree of restriction, the plaintiff's segregated confinement did not implicate any federally protected liberty interest. Id. at 486-87. Therefore, the Court determined that the plaintiff was not entitled to federal due process protections before prison officials could impose the challenged category of confinement.

Williams' submissions indicate that officials have held him away from the general population under a more restrictive category of detention because they perceived that he was making threats. Williams does not allege facts demonstrating that conditions in this administrative detention have posed any atypical hardship on him as compared to other categories of discretionary detention within the VDOC's classification system. As such, he fails to demonstrate that he had any protected liberty interest under Sandin that required federal due process protections before he could be detained. For these reasons, the court will dismiss Williams' § 1983 claims without prejudice, pursuant to § 1915A(b)(1), as frivolous.[4]

## Conclusion

For the reasons stated, the court grants Williams' motion for leave to file a second amended complaint, but dismisses that second amended complaint without prejudice, pursuant to § 1915A(b)(1), as frivolous.[5] An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 17th day of October, 2013.

Chief United States District Judge

---

[4] Williams also has no independent § 1983 claim based on allegations that the defendants violated VDOC regulations related to his detention. See Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990) (finding that state's failure to abide by its own procedural regulations is not a federal due process issue). The court also declines to exercise supplemental jurisdiction over any state law claims related to plaintiff's allegations in this action and dismisses all such claims without prejudice, pursuant to 28 U.S.C. § 1367(c).

[5] The court notes that Williams' admitted failure to exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a) presents an alternative ground for dismissal of this case. The claims in this action are based on events in July 2013. Williams presents evidence that in April 2013, he complained in writing about officers not making informal complaint forms available to inmates in the pod area or otherwise providing such forms to inmates. An inmate must attempt informal resolution of an issue before raising it in a regular grievance and must ordinarily use an informal complaint form for this purpose. Williams offers no evidence, however, that he attempted to obtain an informal complaint form in July 2013 or that he filed any regular grievance about the events at issue in his § 1983 complaint. Williams also believes that he cannot file grievances about actions taken by prison administrators. The court is unaware of any such limitation in the prison's well-established grievance procedures. Because Williams' allegations fail to state any actionable § 1983 claim, however, the court will dismiss the action on that basis, without further discussion of Williams' failure to comply with § 1997e(a).